UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Illinois Casualty Company,

          Plaintiff,

v.

Kladek, Inc., *doing business as* King of Diamonds, Andra Cheri Moreland, April Puck, Brittany Wilcox, Brooke Marrin, Denise Trlica, Emily Sears, Ina Schnitzer, Jaime Edmondson Longoria, Jamie Middleton, Jennifer Archuleta, Jessica Burciaga, Jessica Hinton, Jessica Rockwell, Lina Posada, Lucy Pinder, Maysa Quy, Rhian Sugden, Rosie Wicks, Tara Leigh Patrick, and Ursula Mayes[1],

          Defendants.

Civil No. 22-3214 (DWF/DJF)

**MEMORANDUM OPINION AND ORDER**

---

Beth A. Jenson Prouty, Esq., Arthur Chapman, counsel for Plaintiff Illinois Casualty Company.

Dwight G. Rabuse, Esq., DeWitt LLP, counsel for Defendant Kladek, Inc.

Edmund S. Aronowitz, Esq., Aronowitz Law Firm PLLC, Garrett D. Blanchfield, Jr., Esq., Reinhardt Wendorf & Blanchfield, counsel for Andra Cheri Moreland, April Puck, Brittany Wilcox, Brooke Marrin, Denise Trlica, Emily Sears, Ina Schnitzer, Jaime Edmondson Longoria, Jamie Middleton, Jennifer Archuleta, Jessica Burciaga, Jessica Hinton, Jessica Rockwell, Lina Posada, Lucy Pinder, Maysa Quy, Rhian Sugden, Rosie Wicks, Tara Leigh Patrick, and Ursula Mayes.

---

[1]     The Court notes that Camila Davalos and Mariana Davalos were named in the original complaint as interested parties, but they are not included in the amended complaint. Thus, their names have been removed from the caption.

## INTRODUCTION

This matter is before the Court on Andra Cheri Moreland, April Puck, Brittany Wilcox, Brooke Marrin, Denise Trlica, Emily Sears, Ina Schnitzer, Jaime Edmondson Longoria, Jamie Middleton, Jennifer Archuleta, Jessica Burciaga, Jessica Hinton, Jessica Rockwell, Lina Posada, Lucy Pinder, Maysa Quy, Rhian Sugden, Rosie Wicks, Tara Leigh Patrick, and Ursula Mayes's (collectively, "Models") motion to compel arbitration and stay proceedings.  (Doc. No. 20.)  Defendant Kladek and Plaintiff Illinois Casualty Company ("ICC") oppose the motion.  (Doc. Nos. 33, 39.)  Also before the Court is Kladek's motion to dismiss, compel arbitration, and stay proceedings.  (Doc. No. 27.) ICC opposes the motion.  (Doc. No. 36.)  For the reasons set forth below, the Court grants in part and denies in part Kladek's motion and denies Models' motion.  The entire action will be referred to arbitration.

## BACKGROUND

In a separate case, Models have sued Kladek, alleging that Kladek used photos of them in advertisements for its strip club without their consent or authorization.  *Moreland et al. v. Kladeck, Inc.*, No. 21-1975 (D. Minn. filed Sept. 3, 2021).  Kladek is insured by ICC under a Businessowners Policy.  (Doc. No. 8 ("Am. Compl.") ¶ 42.)  ICC seeks a declaratory judgment that it owes no duty to defend or indemnify Kladek in the *Moreland* case.  (*Id.* ¶ 1.)

Two attachments of the Businessowners Policy are relevant here:  the Businessowners Liability Coverage Form and the Cyber Protection Endorsement.  (*Id.* ¶ 44.)

2

The Businessowners Liability Coverage applies to a variety of circumstances where an insured "becomes legally obligated to pay" damages due to "bodily injury, property damage, or personal and advertising injury." (Doc. No. 34-2 at 85 (internal quotations omitted).) This coverage requires an insured to notify ICC "as soon as practicable" of any occurrence which may result in a claim. (*Id.* at 101.)

The Cyber Protection Endorsement ("Cyber Endorsement") is additional coverage, separate from the Businessowners Liability Coverage. (*Id.* at 95, 113.) The Cyber Endorsement states that "[t]he terms, conditions, exclusions, and limits of insurance set forth in this form apply only to coverage provided by this form. The coverage shown in the schedule of this form is additional insurance." (*Id.* at 113.)

Under this endorsement, the insured must provide ICC with written notice of a claim "no later than sixty (60) days after the claim is first made against the insured." (*Id.* at 114 (internal quotations omitted).) It further states that the notice provision is a "condition precedent to coverage." (*Id.* at 132.)

The Cyber Endorsement ends with the following arbitration agreement:

> Notwithstanding any other provision of this form or the Policy, **any irreconcilable dispute between us and an "insured" is to be resolved by arbitration in accordance with the then current rules of the American Arbitration Association**, except that the arbitration panel shall consist of one arbitrator selected by the "insured", one arbitrator selected by us, and a third independent arbitrator selected by the first two arbitrators. Judgment upon the award may be entered in any court having jurisdiction. The arbitrator has the power to decide any dispute between us and the "insured" concerning the application or interpretation of this form. However, the arbitrator shall have no power to change or add to the provisions of this form. The "insured" and us will share equally in the cost of arbitration.

(*Id.* at 133 (emphasis added).)

3

In ICC's complaint for declaratory judgment, ICC named Kladek as defendant and Models as interested parties. (Am. Compl. ¶¶ 4-25.) Models now move to compel arbitration and stay proceedings (Doc. No. 20), which both Kladek and ICC oppose for lack of standing (Doc. Nos. 33, 39). Separately, Kladek moves to compel arbitration of only the Cyber Endorsement dispute. (Doc. No. 27.) ICC opposes arbitration. (Doc. No. 36.)

## DISCUSSION

### I. Legal Standard

A motion to compel arbitration is evaluated under the Federal Rules of Civil Procedure either as a Rule 12(b)(6) motion to dismiss or as a Rule 56 motion for summary judgment, depending on whether the Court considers matters outside of the pleadings. *City of Benkelman v. Baseline Eng'g Corp.*, 867 F.3d 875, 881-82 (8th Cir. 2017). Documents "necessarily embraced by the complaint" are considered part of the pleadings. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004). The amended complaint in this case embraces the insurance policy, so the motions to compel arbitration will be analyzed as motions to dismiss under Rule 12(b)(6).

In evaluating a 12(b)(6) motion, the Court must accept all factual allegations as true and view all reasonable inferences in the light most favorable to the non-moving party. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The factual allegations in the complaint must "raise a right to relief above the speculative level." *Id.* at 555.

4

## II. Models' Motion to Compel Arbitration

"[S]tate contract law governs the threshold question of whether an enforceable arbitration agreement exists between litigants" and whether a nonsignatory may enforce an arbitration provision. *Donaldson Co., Inc. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 731-32 (8th Cir. 2009). In this case, Minnesota contract law applies.

Generally, arbitration agreements are contractual and "cannot be enforced by persons who are not parties to the contract." *Onvoy, Inc. v. SHAL, LLC*, 669 N.W.2d 344, 356 (Minn. 2003). There are only a few exceptions to this general rule. Under principles of agency, a nonsignatory can compel arbitration if the nonsignatory was acting on behalf of a signatory "in furtherance of the agreement." *Id.* A nonsignatory may also compel arbitration as a third-party beneficiary to a contract "if the contracting parties intended the third party to directly benefit from the contract." *Id.* (internal quotations and citation omitted). In this case, Models do not assert that they acted on behalf of Kladek, nor do they argue that Kladek and ICC intended for Models to be third-party beneficiaries.

Most relevant to this case is the doctrine of equitable estoppel. Under Minnesota law, equitable estoppel "is an exception to the rule and 'prevents a signatory from relying on the underlying contract to make his or her claim against the nonsignatory.'" *In re Wholesale Grocery Prods. Antitrust Litig.*, 707 F.3d 917, 921 (8th Cir. 2013) (quoting *Onvoy, Inc.*, 669 N.W.2d at 356). For example, equitable estoppel applies when a signatory's claims against a nonsignatory "ar[ise] directly from violations of the terms of a contract containing an arbitration clause." *Id.* And thus "[w]ithout the contracts in

5

those cases, the [signatory] would not have had a cause of action." *Id.* That is not the case here. ICC's declaratory judgment claim does not arise out of "violations of the terms of a contract." *Id.* Nor does ICC assert any claims against Models; rather, ICC seeks clarification of its legal obligations under the insurance contract and named Models as interested parties. Additionally, declining Models' motion would not "eviscerate[e] the underlying arbitration agreement between the signatories," *CD Partners, LLC v. Grizzle*, 424 F.3d 795, 798 (8th Cir. 2005) (internal quotations and citation omitted), as Kladek has brought its own motion to compel arbitration. The Court concludes that Models cannot use equitable estoppel to compel Kladek and ICC to arbitrate this dispute.

Finally, Models urge the Court to rely on *Eckert/Wordell Architects, Inc. v. FJM Props. of Willmar, LLC*, 756 F.3d 1098 (8th Cir. 2014), which held that whether "a particular arbitration provision may be used to compel arbitration between a signatory and a nonsignatory" is a threshold arbitrability issue that can be delegated to the arbitrator. *Id.* at 1100. That case, however, is factually distinguishable from the case at hand. "[T]he delegation provision in *Eckert* broadly encompassed 'any claim, dispute, or other matter in question arising out of or related to the contract' regardless of whether the dispute was between the parties to the contract." *Burnett v. Nat'l Ass'n of Realtors*, 615 F. Supp. 3d 948, 958-59 (W.D. Mo. 2022) (citing *Eckert/Wordell Architects, Inc.*, 756 F.3d at 1099). Here, the arbitration agreement only applies to "us" (ICC) and an "insured." (Doc. No. 34-2 at 133.) Because Models do not argue that they are insured, there is no plausible dispute involving Models to delegate to the arbitrator. "[A] court may submit to arbitration only those disputes that the parties have agreed to submit."

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 302 (2010) (cleaned up). And here, the parties only agreed to submit to arbitration disputes between ICC and an "insured." (Doc. No. 34-2 at 133.) Because Models do not have standing to bring a motion to compel arbitration, their motion is dismissed.

**III.    Kladek's Motion to Compel Arbitration**

Separately, Kladek moves to compel arbitration of the Cyber Endorsement dispute. Two conditions must be met for the Court to compel arbitration. First, the parties must have entered into a valid agreement to arbitrate. *Airtel Wireless, LLC v. Mont. Elecs. Co., Inc.*, 393 F. Supp. 2d 777, 786 (D. Minn. 2005). Second, the parties' specific dispute must fall within the scope of that arbitration agreement. *Id.* These "threshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc.*, 756 F.3d at 1100.

Both parties agree that issues of arbitrability have been clearly delegated to the arbitrator, as the American Arbitration Association ("AAA") Rules have been incorporated into the agreement. *See Fallo v. High-Tech Inst.*, 559 F.3d 874, 880 (8th Cir. 2009) ("[T]he parties' incorporation of the AAA Rules is clear and unmistakable evidence that they intended to allow an arbitrator to answer [the question of arbitrability]."). ICC argues, however, that because Kladek failed to provide timely notice of the *Moreland* action, Kladek failed to satisfy a condition precedent to arbitration. Moreover, both parties assert that only the dispute related to the Cyber Endorsement should be arbitrated. Thus, the Court must determine (1) whether the issue

7

of notice should be delegated to the arbitrator, and (2) if so, whether the Court should send the entire action to arbitration or only the dispute related to the Cyber Endorsement.

### A.  Procedural Issue

ICC argues that because Kladek failed to provide timely notice, which is a condition precedent to arbitration, the Court should deny Kladek's motion to compel arbitration. Procedural questions like this are presumptively for an arbitrator to decide. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). "[I]n the absence of an agreement to the contrary, . . . issues of procedural arbitrability, *i.e.,* whether prerequisites such as time limits, notice, laches, estoppel, and other conditions precedent to an obligation to arbitrate have been met, are for the arbitrators to decide." *Id.* at 85 (emphasis omitted) (internal quotations and citation omitted). In this case, there is no evidence that the parties agreed to have the Court decide procedural questions, and thus these questions are reserved for the arbitrator.

### B.  Scope of the Arbitration Agreement

The next question for the Court is whether the entire action or only the dispute related to the Cyber Endorsement should be sent to arbitration. Both ICC and Kladek assert that only the dispute related to the Cyber Endorsement should be subject to arbitration.

As noted above, issues of arbitrability have been clearly delegated to the arbitrator, as the parties incorporated the AAA Rules into the arbitration agreement. Neither Kladek nor ICC dispute this fact. Thus, any issues concerning "whether the[] agreement covers a particular controversy" are reserved for the arbitrator. *Henry Schein, Inc. v. Archer &*

*White Sales, Inc.*, 139 S. Ct. 524, 529 (2019) (internal quotations and citation omitted). The Court has no power to decide which disputes between the parties fall within the scope of the arbitration agreement. "That is true even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Id.* While Kladek and ICC would like the Court to limit the scope of the arbitration agreement—and their assertion that the arbitration agreement only covers the Cyber Endorsement may very well have merit—such determinations have been reserved for the arbitrator. The Court will therefore refer the entire action to arbitration.

### IV.     Motion to Stay Proceedings

When an issue has been properly referred to arbitration, the district court may decide "whether it is appropriate . . . to dismiss [the plaintiff's] complaint or stay the action in federal court pending the outcome of the arbitration proceedings." *Unison Co. v. Juhl Energy Dev., Inc.*, 789 F.3d 816, 821 (8th Cir. 2015). The general rule is that the court should "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. There is a limited exception where a court may dismiss the action, rather than stay it, "where it is clear the entire controversy between the parties will be resolved by arbitration." *Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011).

In this case, given the parties' agreement that certain disputes fall outside the scope of the arbitration agreement, the Court suspects that arbitration will not resolve the entire controversy. For that reason, the Court will stay this action pending arbitration.

## CONCLUSION

For the reasons outlined above, the Court denies Models' motion to compel arbitration for lack of standing and grants in part and denies in part Kladek's motion to compel arbitration. The Court will refer the entire action to arbitration and any determination as to the scope of the arbitration agreement will be reserved for the arbitrator.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Models' motion to compel arbitration and stay proceedings (Doc. No. [20]) is **DENIED**.

2. Kladek's motion to dismiss, compel arbitration, and stay proceedings (Doc. No. [27]) is **GRANTED IN PART** and **DENIED IN PART** as follows: The Court will refer the entire action to arbitration.

3. This case is **STAYED** to allow the parties to proceed through arbitration.

Dated: July 31, 2023                    s/Donovan W. Frank
                                                    DONOVAN W. FRANK
                                                    United States District Judge