UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Illinois Casualty Company, | Civil No. 22-3214 (DWF/DJF) |
| Plaintiff, | |
| v. | |
| Kladek, Inc. *doing business as* King of Diamonds, Andra Cheri Moreland, April Puck, Brittany Wilcox, Brooke Marrin, Denise Trlica, Emily Sears, Ina Schnitzer, Jaime Longoria, Jamie Middleton, Jennifer Archuleta, Jessica Burciaga, Jessica Hinton, Jessica Rockwell, Lina Posada, Lucy Pinder, Maysa Quy, Rhian Sugden, Rosie Wicks, Tara Leigh Patrick, and Ursula Mayes, | MEMORANDUM OPINION AND ORDER |
| Defendants. | |

# INTRODUCTION

This matter involves the question of whether Plaintiff Illinois Casualty Company ("ICC") owes a duty to defend or indemnify Defendant Kladek, Inc. ("Kladek"), for claims asserted against Kladek in a separate case, *Moreland et al. v. Kladek, Inc.*, Civ. No. 21-1975 (D. Minn.) (the "Underlying Suit"). Before the Court are cross motions for summary judgment filed by ICC (Doc. No. 56) and Kladek (Doc. No. 62). Kladek and Defendant Models (the "Models")[1] oppose ICC's motion. (Doc. Nos. 64, 68.) ICC

---

[1] The Models are the individually named Defendants in this action: Andra Cheri Moreland, April Puck, Brittany Wilcox, Brooke Marrin, Denise Trlica, Emily Sears, Ina Schnitzer, Jaime Longoria, Jamie Middleton, Jennifer Archuleta, Jessica Burciaga,

opposes Kladek's motion. (Doc. Nos. 69, 70.) Both motions seek declaratory judgment regarding ICC's duties. For the reasons discussed below, the Court denies ICC's motion and grants Kladek's motion.

## BACKGROUND

In the Underlying Suit, the Models[1] sued Kladek, alleging that Kladek, doing business as King of Diamond's Gentlemen's Club (the "Club"), used photos of them in advertisements for the Club on the Club's Facebook, Instagram, and Twitter accounts without the Models' consent or authorization. The Models allege the following causes of action:

- Count I: Violations of the Lanham Act, 15 U.S.C. § 1125(a) *et seq.*, by False Endorsement, Unfair Competition, and/or False Advertising;
- Count II: Violation of Plaintiffs' Minnesota Common Law of Publicity Through Appropriation;
- Count III: Negligence
- Count IV: Violation of Minnesota's Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44 ("MDTPA"); and
- Count V: Unjust Enrichment.

(Civ. No. 21-1975, Doc. No. 1.)

Kladek is insured by ICC under a Businessowners Policy (the "Policy"). (Doc. No. 59 ¶ 4, Ex. B ("Policy").) ICC brought this action, seeking a declaration that it does not owe any duty to defend or indemnify Kladek for the claims asserted against it in the Underlying Suit. (Doc. No. 8 ("FAC") ¶ 1.) Kladek answered the FAC and asserted counterclaims, including a counterclaim seeking a determination and order from this

---

[1] Jessica Hinton, Jessica Rockwell, Lina Posada, Lucy Pinder, Maysa Quy, Rhian Sugden, Rosie Wicks, Tara Leigh Patrick, and Ursula Mayes.

Court that ICC has a duty to defend and indemnify Kladek against the allegations made in the Underlying Suit pursuant to the Policy. (Doc. No. 11.)

Two attachments to the Policy are relevant: the Businessowners Liability Coverage Form ("Businessowners Liability Coverage") and the Cyber Protection Endorsement (the "Cyber Endorsement"). (FAC ¶ 44.) The Businessowners Liability Coverage applies to a variety of circumstances where an insured "becomes legally obligated to pay" damages due to "bodily injury, property damage, or personal and advertising injury." (Policy at 86 (citation modified).) The Cyber Endorsement is additional coverage, separate from the Businessowners Liability Coverage. (*Id.* at 96, 114.) The Cyber Endorsement states that "[t]he terms, conditions, exclusions, and limits of insurance set forth in this form apply only to the coverage provided by this form. The coverage shown in the schedule of this form is additional insurance . . . ." (*Id.* at 114.) In addition, the Cyber Endorsement purports to amend the Businessowners Liability Coverage. (*Id.* ("This form amends your policy to provide Cyber Protection insurance on a Claims-Made and Reported basis.").)[2]

In an order dated July 31, 2023, the Court ordered that an arbitration panel should determine any coverage under the Cyber Endorsement, which was subject to an arbitration agreement. (Doc. No. 44 at 10.) An arbitration panel concluded that ICC owes Kladek a duty to defend under the Cyber Endorsement (Doc. No. 52), and ICC is providing a defense to Kladek under that provision. The panel did not determine whether

---

[2]  The Court cites to the most recent version of the policy excerpts.

3

Kladek is entitled to indemnification under the Cyber Endorsement. Nor did it determine whether Kladek is entitled to defense and indemnity under the Personal and Advertising Coverage provided under the Businessowners Liability Coverage.[3] The parties now dispute whether the Policy's Businessowners Liability Coverage provides an additional duty to defend in the Underlying Suit.[4]

The Businessowners Liability Coverage provides, in part, the following:

**BUSINESS LIABILITY COVERAGE FORM**

. . .

**A.   Coverage**

   **1. Business Liability**

      **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages for "bodily injury", "property damage", or "personal and advertising injury" to which this insurance does not apply.

(Policy at 86.) The Policy also provides the following definitions:

"Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products

---

[3] The arbitration panel concluded that it did not have authority to render any award or opinion related to coverages afforded under other portions of the Policy. (Doc. No. 52.)

[4] The issue is important because the Cyber Endorsement provides less coverage than that provided under the Personal and Advertising injury provision of the Businessowners Liability Coverage.

4

or services for the purpose of attracting customers or supporters. For the purposes of this definition:

    **(1)**    Notices that are published include material placed on the Internet or on similar electronic means of communication; and

    **(2)**    Regarding websites, only that part of a website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an "advertisement".

. . .

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

. . .

    **(4)**    Oral or written publication, in any manner, or material that slanders or libels a person or organization or disparages a person's or organization's good, products or services;

    **(5)**    The use of another's advertising idea in your "advertisement": or

    **(6)**    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

(*Id.* at 104, 108.)

ICC brings a motion for summary judgment asking the Court to conclude, as a matter of law, that it has no duty under the Businessowner's Liability Coverage to defend or indemnify Kladek against the claims alleged by the Models in the Underlying Suit. In support, ICC claims that three policy exclusions preclude coverage of all claims—the Law Exclusion, Electronic Chatroom Exclusion, and Multimedia Exclusion.

Kladek opposes ICC's motion and moves separately for summary judgment in favor of its counterclaim seeking a declaration that the claims in the Underlying Suit fall within the personal and advertising injury coverage of the Businessowner's Liability Coverage and are not subject to the exclusions invoked by ICC. In addition, Kladek argues that if any claim is covered by the Policy, as a matter of law, ICC is obligated to defend the entire Underlying Suit under the terms of the main liability form.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). The Court will consider the cross-motions drawing inferences against each movant as warranted. *See, e.g.*, *Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). "A party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set

6

forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation modified).

## II.     Interpretation of Insurance Policies

An insurer assumes two duties under Minnesota law, to defend and to indemnify, the former broader than the latter. *Selective Ins. Co. of Am. v. Smart Candle, LLC*, 781 F.3d 983, 985 (8th Cir. 2015). If there is no duty to defend, there is no duty to indemnify. *Id.* Whether an insurer has a duty to defend or indemnify the insured when an action arises is a legal question. *Franklin v. W. Nat'l Mut. Ins. Co.*, 574 N.W.2d 405, 406 (Minn. 1998). If any claim is arguably covered under the policy, then the insurer must defend. *Selective Ins. Co.*, 781 F.3d at 985 (applying Minnesota law); *see also SCSC Corp. v. Allied Mut. Ins. Co.*, 536 N.W.2d 305, 316 (Minn. 1995) ("If any claim is arguably covered under a policy, the insurer must defend and reserve any arguments regarding coverage."), *overruled on other grounds by Bahr v. Boise Cascade Corp.*, 766 N.W.2d 910 (Minn. 2009). "Where there is no coverage by reason of an exclusionary clause, there is no obligation to defend." *Bobich v. Oja*, 104 N.W.2d 19, 24 (Minn. 1960). If an insurer seeks to establish that it does not have a duty to defend, it "must show that each claim asserted in the lawsuit clearly falls outside the policy." *Meadowbrook, Inc. v. Tower Ins. Co., Inc.*, 559 N.W.2d 411, 418 (Minn. 1997) (citation modified).

Because the duty to defend is broader than the duty to indemnify, an insurer must still provide the defense while contesting coverage. *Haarstad v. Graff*, 517 N.W.2d 582, 585 (Minn. 1994). The duty to indemnify requires an insurer to pay damages that the

insured is legally obligated to pay for covered claims, and it "arises only if the insured ultimately proves up facts showing coverage." *Nelson v. Am. Home Assurance Co.*, 824 F. Supp. 2d 909, 915 (D. Minn. 2011).

The interpretation of an insurance policy is governed by state law. *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010.) Subject to the statutes of Minnesota, general principles of contract interpretation apply to insurance policies. *See Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998). The goal of insurance policy interpretation is to give effect to the parties' intent. *Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co.*, 615 N.W.2d 341, 344 (Minn. 2000). If policy language "is clear and unambiguous," courts effectuate the intent of the parties by "interpret[ing] the policy 'according to plain, ordinary sense.'" *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008) (quoting *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977)). Insurance policy exclusions must be given the same consideration as any other part of the contract in determining the scope of coverage. *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 880 (Minn. 2002). However, under Minnesota law, courts read policies in favor of finding coverage, construing words of inclusion broadly and words of exclusion narrowly. *Westfield Ins. Co. v. Robinson Outdoors, Inc.*, 700 F.3d 1172, 1174 (8th Cir. 2012).

"In an action to determine coverage, the initial burden of proof is on the insured to establish a prima facie case of coverage." *SCSC Corp.*, 536 N.W.2d at 311. The duty to defend is determined by examining the underlying complaint and the policy coverage. *Sletten & Brettin Orthodontics, LLC v. Cont'l Cas. Co.*, 782 F.3d 931, 934-35 (8th Cir.

2015). Thus, the Court refers to the complaint filed by the Models in the Underlying Suit.

### III. Interpretation and Application of the Exclusions

In the Underlying Suit, the Models bring various claims against Kladek. These claims fall within the advertising injury coverage of the Businessowner's Liability Coverage. ICC argues, however, that it is excused from providing defense and indemnity because the Models' claims all fall within policy exclusions.

#### A. Law Exclusion

In the Underlying Suit, the Models bring two statutory claims—one under the Lanham Act (Count I) and another under the MDTPA (Count IV). ICC argues that these statutory claims fall within the Law Exclusion of the Businessowners Liability Policy. Specifically, the Law Exclusion (exclusion d(12)) precludes coverage for:

> Any liability or legal obligation of any insured with respect to "bodily injury", "property damage" or "personal or advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:
> . . .
> **(12)** Any federal, state, county, municipal or local consumer fraud protection law, regulation, ordinance, order, or directive barring fraud, unfair competition, and/or deceptive business practices.

(Policy at 89-90.) ICC argues that the Models' statutory claims involve federal and state consumer protection laws that bar fraud, unfair competition, and/or deceptive business practices and, therefore, are excluded from coverage.

Kladek argues that the Models' statutory claims are not excluded. Kladek stresses that the Lanham Act and MDTPA claims apply to various types of conduct, not all of

9

which can be labeled "consumer fraud." And because the policy exclusion applies to "consumer fraud protection" laws, it would *not* apply to the statutory claims insofar as they do not implicate consumer fraud conduct.

The Court agrees with Kladek. The Lanham Act addresses different behaviors, including false advertising, false endorsement, and unfair competition. 15 U.S.C. § 1125(a). In the Underlying Suit, the Models allege that Kladek is liable to the Models for false endorsement, unfair competition, and/or false advertising violations of the Lanham Act. (Civ. No. 21-1975, Doc. No. 1 ¶ 81.) Specifically, the Models allege that through their careers they have attained a degree of fame and celebrity, that they enjoy a substantial social media following, that they have earned compensation for commercializing their identities, and that they possess a valid and protectable mark in the form of their persona, image, likeness, identity, and trade dress. (*Id.* ¶¶ 82-85.) The Models further allege that Kladek's unauthorized use of their images to promote the Club caused confusion as to the Models' affiliation with the Club and a false impression that the Models were affiliated with the Club. (*Id.* ¶¶ 97-103.) As a result, the Models claim that Kladek enjoyed increased revenues and deprived the Models of the fair market value compensation they would have received for the use of their images and harmed their goodwill and reputation. (*Id.* ¶¶ 104-05.) Notably, the Models have not alleged that any "consumer" has been defrauded. Instead, the Models allege that they were wronged because their images were used without their authorization or compensation. These claims are not "consumer fraud" claims at their core, but rather commercial claims involving advertising injury.

10

Because the core of the Models' Lanham Act claim alleges an injury caused by the unauthorized use of their images without compensation by the Club, and not a consumer fraud claim, ICC has not demonstrated that the Law Exclusion applies to the Models' Lanham Act claim. Because the Models' Lanham Act claims falls within the scope of coverage and is not subject to the Law Exclusion, ICC has a duty to defend, unless all of the Models' claims are covered by one of the remaining exclusions.[5] The Court therefore turns to those exclusions.

### B.  Electronic Chatroom Exclusion

ICC argues that the Electronic Chatroom Exclusion precludes coverage of the Models' claims. The relevant Electronic Chatroom Exclusion language reads:

---

[5]  ICC argues that the Law Exclusion applies to the Models' Minnesota statutory (MDTPA) and common law (Publicity Through Appropriation (Count II), Negligence (Count III), and Unjust Enrichment (Count V)) claims. The Court need not, and declines to, reach the issue of whether the Law Exclusion covers these claims. Because the Court determines that the Models' Lanham Act claim is covered, ICC has a duty to defend, unless a different exclusion precludes all claims. *See Selective Ins. Co.*, 781 F.3d at 985.

Kladek also argues, in the alternative, that the doctrine of illusory coverage would warrant denial of ICC's motion for summary judgment. Under that doctrine, when policy exclusions appear to be broader than the coverage, so as to "swallow up" the coverage, rendering the insuring promise illusory, a court will avoid that unreasonable result. *See, e.g., Princeton Excess & Surplus Line Ins. Co. v. R. I. Cranston Ent., Inc.*, 725 F. Supp. 3d 184, 194 (D.R.I. 2024) ("[C]ourts will not uphold an exclusion that leads to unreasonable results, particularly if doing so will make another part of the coverage illusory."). While the Court need not reach that alternative argument, it notes that it finds the argument compelling, as it appears that the ICC's broad interpretation of the policy exclusions would preclude coverage in most factual scenarios.

**Personal and Advertising Injury**

> **(1)** This insurance does not apply to "Personal and advertising injury":
> . . .
>> **(k)** Arising out of any electronic chat room, bulletin board, or blog the insured hosts, owns, or over which any insured exercises control.

(Policy at 96.)

ICC argues that the Electronic Chatroom Exclusion applies because Facebook, Instagram, and Twitter—the platforms on which the Models' images were used—all allow users to post or read messages and control or host their own bulletin boards—and therefore, the platforms are "bulletin boards" controlled by Kladek. As such, ICC argues that any personal or advertising injury arising out of the use of the bulletin board is excluded.

The ICC Policy does not define "bulletin board" or "electronic chat room." Therefore, the plain meanings of those terms apply. "A chat room is an online platform that enables users to communicate with each other in real time" and is "typically hosted on a server with an internet connection, enabling members from around the world to hold conversations about various topics." Katie Terrell Hanna, *Chat Room*, TechTarget (Jan. 30, 2023), https://www.techtarget.com/whatis/definition/chat-room. An "electronic bulletin board" is an "online communication system[] where one can share, request, or discuss information on just about any subject." *Electronic Bulletin Boards Law and Legal Definition*, US Legal (last visited July 22, 2025). In contrast, as commonly understood, Facebook, Instagram, and Twitter are social media platforms. Social media

12

platforms include "[a]ny cell phone or internet based tools and applications that are us[]ed to share and distribute information." *Social Media*, The Law Dictionary, https://thelawdictionary.org/social-media/ (last visited July 22, 2025).

Kladek posted the Models' images on Facebook, Instagram, and Twitter. Kladek does not host, own, or exercise control over those social media platforms. Instead, Kladek used those platforms to promote its business. There is no evidence that it did so with any intention to generate any discussion among viewers. Indeed, the use of the Models' images did not occur in a chat room, on a bulletin board, or on a blog. Instead, the images were posted on the pages of its social media accounts. *See, e.g.*, *State Farm Fire & Cas. Co. v. Franklin Ctr. for Gov't & Public Integrity*, Co. 1:13-cv-957, 2014 WL 1365758, at *7 (E.D. Va. Apr. 4, 2014) (holding that chatroom exclusion does not apply where articles were posted on the party's website and not in a chatroom or online bulletin board). The Court concludes that ICC has not met its burden to demonstrate that the Electronic Chatroom Exclusion applies to the Models' claims.

### C. Multimedia Exclusion

Finally, ICC argues that the Multimedia Liability Exclusion precludes coverage of the Models' claims. The relevant language from the Policy reads:

> **Cyber Protection**
>
> This insurance does not apply [to] any of the following, as defined under the Cyber Protection Form BL EC 06, except to the extent that coverage may be provided under the Cyber Protection Form BL EC 06.
>
> **(a)** Multimedia Liability

13

(Policy at 96.)

The Cyber Protection Coverage, Form BL EC 06, Multimedia Liability Coverage Section provides:

> **Multimedia Liability Coverage**
>
> Subject to the limits of insurance specified in the Schedule, we will pay:
>
> > a. "Damages" which an "insured" becomes legally obligated to pay; and
> >
> > b. "Defense costs",
>
> resulting from a "claim" for an actual or alleged "multimedia peril(s)."  . . .
>
> "Electronic media" means
> floppy disks, CD ROM's, hard drives, magnetic tapes, magnetic discs, or any other media on which electronic data is recorded or stored.
>
> . . .
>
> "Internet" means
> the worldwide public network of computers which enables the transmission of electronic "data" between different users, including a private communications network existing within a shared or public network platform.
>  . . .
>
> "Multimedia peril" means the release or display of any "electronic media" on your "internet" site or "print media" for which you are solely responsible, which directly results in any of the following:
>
> > a.  Any form of defamation or other tort related to the disparagement or harm to the reputation or character of any person or organization, including libel, slander, product disparagement, or trade libel;
> >
> > b.  Invasion, infringement or interference with an individual's right of privacy including false light, intrusion upon seclusion, commercial misappropriation

14

>    of name, person, or likeness, and public disclosure of
>    private facts;
>
> c. Plagiarism, piracy, or misappropriation of ideas under
>    an implied contract;

(*Id.* at 115, 128-29.)

ICC asserts that this exclusion should be interpreted to preclude coverage under the Businessowner's Liability Coverage (allowing for personal and advertising injury coverage) because the Underlying Suit alleges a "multimedia peril" that falls within the Cyber Endorsement. In particular, ICC argues that the Models' claim that Kladek released or displayed their images on various "internet" sites—Facebook, Instagram, and Twitter—and that these displays caused them harm, is a claim of multimedia peril. In essence, ICC appears to argue that because the ICC has a duty to defend claims under the Cyber Endorsement (as determined by the arbitration panel), all of the Models' claims are now excluded from coverage under the Policy.

The Court disagrees. First, the arbitration panel only decided that ICC has a duty to defend under the Cyber Endorsement but reserved the question of whether ICC has a duty to indemnify. Notably, the arbitration panel did *not* determine which claims in the Underlying Suit triggered the duty to defend under the Cyber Endorsement. And prior to the arbitration proceeding, ICC claimed that it was not obligated to cover under the Cyber Endorsement; indeed, both parties asserted that only the dispute related to the Cyber Endorsement should be arbitrated (*see* Doc. No. 44 at 7), and therefore, presumably acknowledged that there were claims that fell outside of the Cyber Endorsement.

15

Second, and perhaps more importantly, Kladek has submitted evidence that in drafting the Cyber Endorsement, ICC created several ambiguities. For example, the caption on the front page of the Cyber Endorsement displays "Businessowners Liability" that is inconsistent with the endorsement's applicability. In addition, the Cyber Endorsement is unclear with respect to its relationship with the main liability policy. On the one hand, the Cyber Endorsement states that "[t]his form amends your policy to provide Cyber Protection insurance" and "[v]arious provisions in this form restrict coverage." (Policy at 114.) But it also states that "[t]he terms, conditions, exclusions, and limits of insurance set forth in this form apply only to the coverage provided by this form" and that the coverage is "in addition to, and will not erode, the limits of insurance provided elsewhere under your Policy." (*Id.*) It at once purports to modify the Businessowners Liability Coverage while at the same time states that its terms are limited to the Cyber Endorsement form. There is also confusion between the main liability form, which is written on a traditional "occurrence" basis, and the Cyber Endorsement, which is a claims made policy. (Doc. No. 66 ¶ 3, Ex. A ("Ray Expert Report") at 13.) Kladek's expert opined that the Cyber Endorsement can be read as standalone coverage, and not a modification of the Businessowners Liability Coverage. (*Id.* ¶ 4, Ex. B ("Ray Dep.") at 17-18; Ray Expert Report at 11, 15.) Finally, Kladek has pointed out that the wording of the Multimedia Exclusion is, itself, circular and facially contradictory. The Businessowners Liability Coverage states that the personal and advertising injury coverage does not apply to, among other things, "Multimedia Liability" except to the extent that coverage may be provided under the Cyber Endorsement. (*See* Policy at 96.)

16

This language suggests that a claim covered by the multimedia liability coverage is excluded from Businessowners Liability Coverage unless the claim is covered by the Cyber Endorsement, i.e., once coverage under the Cyber Endorsement is established, there is coverage under the Businessowners Liability Coverage. ICC, however, argues that if there is coverage under the Cyber Endorsement, coverage under the Businessowners Liability coverage is excluded. This language is confusing.

In the end, the Court finds that there are ambiguities in the Cyber Endorsement provision and its relationship with the Businessowners Liability Coverage. Ambiguities are construed against the insurer and in favor of coverage. Therefore, the Court concludes that the Multimedia Exclusion does not preclude coverage of the Models' claims.

## CONCLUSION

The Court concludes that Kladek has demonstrated that the Models' claims fall with the Businessowners Liability Coverage, that ICC has not demonstrated that any exclusions apply, and therefore that ICC has a duty to defend Kladek in the Underlying Suit under the Businessowners Liability Coverage.[6]

## ORDER

Based upon the foregoing and the record in this case, **IT IS HEREBY ORDERED** that:

---

[6] ICC reserves all rights on the duty to indemnify. (Doc. No. 73 at 17-18.) The Court agrees with ICC that a determination on indemnity is premature and is reserved for a future determination.

1. ICC's motion for summary judgment (Doc. No. [56]) is **DENIED**.

2. Kladek's motion for summary judgment on its cross claim for declaratory judgment (Doc. No. [62]) is **GRANTED**.

3. The Court declares that the Underlying Suit includes one or more claims covered under the Policy and Kladek is entitled to a judgment that ICC must defend the Underlying Suit under the Businessowners Liability Coverage.

Dated: July 23, 2025                          s/Donovan W. Frank
                                              DONOVAN W. FRANK
                                              United States District Judge